IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LAVINIA SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-13-1123-F |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|   Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant Commissioner has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits on July 30, 2009, and alleged that she

became disabled on December 29, 2004, due to neck, shoulder, and right knee pain and limitations. (TR 196, 230). Plaintiff had previously been denied disability benefits in a decision entered on June 17, 2009, following a hearing. (TR 225-226). In recognition of this previous adverse decision, the agency determined that Plaintiff's earliest disability onset date was June 18, 2009. (TR 225). Plaintiff later amended her disability onset date to June 23, 2009. (TR 43).

Plaintiff was last insured for benefits on June 30, 2010. (TR 248). Consequently, to be entitled to receive disability insurance benefits, Plaintiff had to show that she was "actually disabled" within the meaning of the Social Security Act prior to June 30, 2010. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

In an administrative hearing conducted on July 27, 2011, before Administrative Law Judge McLean ("ALJ")(TR 40-74), Plaintiff testified that she was 47 years old, had a high school education, and had previously worked as a setup machine operator and hand packager. Plaintiff testified she was unable to work beginning June 23, 2009, due to previous cervical fusion surgery and bulging disc in her cervical spine, with residual neck pain and hand numbness occurring daily, and previous shoulder surgeries with residual, constant shoulder pain, inability to lift her arms above shoulder height, and upper back pain. Plaintiff also described right knee pain and swelling. Plaintiff estimated she could walk for ten minutes and sit for 15 minutes. Her medications caused daily drowsiness, and she stated she was

depressed and that anti-depressant medication was not helpful. Plaintiff estimated she had 15 to 20 bad days a month and that she "can't do anything on a good day." (TR 56). A vocational expert ("VE") also testified at the hearing.

The ALJ issued a decision on November 22, 2011, finding that Plaintiff was not disabled within the meaning of the Social Security Act. Following the well-established sequential evaluation procedure dictated for disability decisionmaking, the ALJ found at step one that Plaintiff had not worked during the relevant time period from her alleged disability onset date of June 23, 2009, through the date she was last insured for benefits. At step two, the ALJ found that during the same relevant time period Plaintiff had severe impairments due to degenerative changes in her cervical spine, status post cervical fusion in December 2004, a history of multiple shoulder surgeries, degenerative changes with osteoarthritis in her right knee, hypertension, hyperlipidemia, trace pedal edema, diabetes mellitus, and obesity. (TR 21-22). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

At step four, the ALJ summarized the medical and non-medical evidence in the record and found that during the relevant time period Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work, including the ability to lift, carry, push, and/or pull up to 10 pounds occasionally and less than 10 pounds frequently, stand and walk up to 2 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, occasionally climb stairs and ramps, kneel, crouch, crawl, or stoop, but she could not climb

ladders, ropes, or scaffolds, could not balance, could not reach overhead with her upper extremities, and should not be exposed to machine vibrations. (TR 26-27).

Based on the description of Plaintiff's previous jobs provided by Plaintiff and the VE, the ALJ found that through her date last insured of June 30, 2010, Plaintiff was capable of performing her past relevant work as a hand packager. Alternatively, the ALJ found that through her date last insured of June 30, 2010, Plaintiff was capable of performing other jobs available in the economy, including the jobs of touch up screener, surveillance system monitor, and hand suture winder. The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052

(citations, internal quotation marks, and brackets omitted).

III. Reliance on VE Testimony at Step Four

Plaintiff contends that there is not substantial evidence in the record to support the ALJ's step four decision because the VE testified Plaintiff could not perform her previous job as a hand packager. At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The ALJ must undertake a three-phase analysis at step four. In the first phase, the ALJ must evaluate the claimant's mental and physical RFC. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

In the second phase, the ALJ must determine the mental and physical demands of the claimant's past relevant work. Bowman, 511 F.3d at 1272 (quotations and citation omitted); Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *4 (1982). In this phase, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." SSR 82-62, 1982 WL 31386, at *3; see Frantz, supra.

In the third phase, the ALJ must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Winfrey, 92 F.3d at 1023 (citations omitted). The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See

Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).

The VE first testified at the hearing that an individual who could perform the RFC for work as described by the ALJ (and later adopted by the ALJ as Plaintiff's RFC for work) could not perform Plaintiff's past relevant work. (TR 70). The ALJ then questioned the VE concerning the Plaintiff's previous hand packager job, and the VE testified that the *Dictionary of Occupational Titles* ("DOT") described the position as "medium" work requiring occasional balancing. (TR 70). When asked "can she do [this job] as she performed it," the VE responded, "Yes." (TR 70). However, the hearing transcript then contains an exchange between the ALJ and VE which appeared to contradict this statement. According to the transcript, the ALJ stated, "Okay. I'm lost. So she *can't* perform the past relevant work of hand packager as she performed it?" (TR 70)(emphasis added). The VE then responded, "Yes."

Later in the hearing, Plaintiff's representative asked for clarification of the VE's testimony with respect to the hand packager job, and the ALJ stated the VE "said she could [perform this previous job.] She could. Okay. A hand packager, as she performed it." (TR 71). The VE did not object to this interpretation of her testimony.

Employing a common sense reading of the transcript, it appears the transcript contains either a typographical error or a misinterpretation by the transcriber with respect to the ALJ's second exchange with the VE described above. The VE failed to object when the ALJ clarified the VE's testimony and stated that the VE had testified Plaintiff *could* perform the previous hand packager job *as she performed it*. The VE's failure to object to this

6

clarification supports the finding.

Defendant argues that even if the ALJ erred in relying on the VE's testimony the ALJ was not required to obtain VE testimony in reaching a decision at step four. However, this begs the question. The ALJ did obtain VE testimony. "A [VE] or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). In SSR 86-61, the agency clarified this regulation by directing that "a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform" either "[t]he actual functional demands and job duties of a particular past relevant job," or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2.

The VE testified that the hand packager job would be classified as sedentary and unskilled work as Plaintiff performed it. (TR 68-69). The VE further testified that the hand packager job was described as medium work in the DOT and that this job, as it was described in the DOT, would not be available to an individual with Plaintiff's RFC for work because it required occasional balancing. The VE's explanation lends further support for the finding that the transcript contains a typographical error or a transcription error. Reading the transcript correctly, the VE testified that Plaintiff could perform her previous hand packager job as she actually performed the job. Under these circumstances, the ALJ did not err in relying on the VE's testimony, and the VE's testimony provides substantial evidence to

support the step-four decision.

Contrary to Plaintiff's argument, the Tenth Circuit Court of Appeals' decision in Haddock v. Apfel, 196 F.3d 1084 (10th Cir. 1999), has no application here. The VE specifically testified that Plaintiff's previous hand packager job would not be available to her as the job was performed in the national economy, using the DOT's description for that job. The VE testified that the job would be available to Plaintiff as she performed it. Because the ALJ inquired about and ascertained the extent of the job's requirements both as described in the DOT and as Plaintiff performed it, no Haddock error occurred here.

Even if the VE's testimony does not provide substantial evidence to support the step-four decision, the ALJ reached an alternative step-five decision, based on the VE's hearing testimony, that other jobs exist in the economy which Plaintiff could perform. Plaintiff has not challenged the alternative step five determination.

IV. Analysis of Credibility

Plaintiff contends that the ALJ's step-four credibility determination was faulty because it was not linked to specific evidence in the record. Plaintiff specifically argues that the ALJ pre-judged Plaintiff's credibility and "adopted only those parts of the [medical] opinions that agreed with his predetermined and assumed RFC" finding. Plaintiff's Opening Brief, at 7. Defendant responds that this allegation has no merit, and the record reflects that the ALJ provided multiple reasons that are well supported by the record for the credibility determination.

The assessment of a claimant's RFC at step four generally requires the ALJ to "make

a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at *1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at *4 (1996). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186, at * 3. See Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p). An ALJ is not, however, required to conduct a "formalistic factor-by-

9

factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012). See also Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)(listing factors relevant to credibility determination); 20 C.F.R. §404.1529(c)(3)(listing factors relevant to symptoms that may be considered by ALJ).

The medical evidence shows that Plaintiff had an MRI of her cervical spine in December 2008 that revealed a fusion at one level with no spinal canal stenosis, small disc protrusions at two other levels causing only minor or mild spinal canal stenosis, and an annular bulge at a third level without stenosis. (TR 272).

In March 2009, Plaintiff sought treatment for type II diabetes, right knee pain, and peripheral edema. (TR 350). Mr. Paul, a registered nurse practitioner noted that medication was prescribed for her diabetes and that she was advised to follow up with Dr. Hoover. (TR 350). There are unsigned notes of follow-up treatment of Plaintiff for diabetes in March 2009, July 2009, and October 2009. (TR 344, 348, 351). She complained of neck and upper back pain in October 2009 and shoulder stiffness and soreness. (TR 351). The unidentified provider's office note indicates Plaintiff was advised to get MRI testing of her cervical spine and that a prescription for MS Contin® (which contains morphine) was refilled. (TR 352).

Plaintiff sought treatment for right knee pain in May 2009, and the treating orthopedic specialist, Dr. Giles, noted that x-rays of her right knee showed diffuse early degenerative changes and early osteophytes. (TR 311). Plaintiff reported that the right knee pain had

10

begun only a couple of months previous to the examination. (TR 308). She stated she took anti-inflammatory medication "intermittent[ly]" for some shoulder and neck issues and that the medication helped her knee. (TR 308).

Plaintiff received several injections as treatment for her right knee pain related to osteoarthritis between May 2009 and December 2009. (TR 291-292, 296, 299, 303, 307, 311-312). Plaintiff was also prescribed anti-inflammatory medication. (TR 311). Dr. Giles noted in May 2009 and again in August 2009 that Plaintiff's right knee was stable and that range of motion in her knee was 0 to 105 degrees before any discomfort was expressed. (TR 303, 310). Plaintiff later reported in March 2010 that the right knee injections had been helpful and she requested another injection. (TR 403).

In a consultative physical examination conducted in October 2009 by Dr. Birdwell, Plaintiff reported that she was in constant pain and had difficulty walking up and down steps and could not reach above her shoulder level, but she was able to do some household chores such as dishwashing, laundry, and vacuuming. (TR 275). Dr. Birdwell noted that on examination Plaintiff exhibited some reduction in cervical and shoulder ranges of motion and no other significant findings. Plaintiff reportedly walked with a stable gait without use of an assistive device and had no difficulty manipulating small objects. (TR 276-281).

In a consultative psychological evaluation conducted by Dr. Danaher in December 2009, Dr. Danaher reported that Plaintiff exhibited no memory, attention, or concentration deficits and her "ability to understand, remember and carry out simple and complex instructions in a work related environment would be rated as adequate." (TR 313-317).

11

In April 2010, Plaintiff was examined by a new treating family physician, Dr. Seymour, who noted Plaintiff exhibited trace pedal edema, normal sensation, reflexes, coordination, muscle strength, and tone, and normal mood, affect, attention span, and concentration. (TR 396). Dr. Seymour recommended Plaintiff exercise and lose weight and prescribed medications for diabetes, hypertension, osteoarthritis, and neck pain. (TR 398).

Another treating physician, Dr. Elfrink, noted in May 2010 that an examination of Plaintiff showed full range of motion in all joints. (TR 385). In May 2010, Plaintiff sought treatment from Dr. Gowani for neck pain. (TR 416). She reported worsening neck pain over the last few years. (TR 416). Dr. Gowani prescribed anti-inflammatory and muscle relaxant medications. Pain medication was prescribed to be taken only as needed. (TR 419).

In March 2011, Plaintiff was seen by Dr. Seymour for follow-up treatment for diabetes and hypertension. (TR 371). Dr. Seymour noted Plaintiff complained of arthritis in her knees and reported she needed "total replacement." (TR 372). Plaintiff also complained of depression beginning in January 2011. (TR 372). There was no evidence of diabetic complications. (TR 373). Medications were prescribed for diabetes. Anti-depressant and anti-inflammatory medications were prescribed for depression and osteoarthritis.

In May 2011, Plaintiff returned to Dr. Seymour who noted she complained of a headache, sinus pressure, and bilateral leg pain. (TR 361). Dr. Seymour noted that Plaintiff exhibited full range of motion in all joints. (TR 361-363). She was treated with medications for leg cramps and sinusitis.

In assessing Plaintiff's credibility, the ALJ noted Plaintiff's allegations of disabling

12

pain and limitations were not consistent with the medical record showing "no complaints with her back or extremities" in recent treatment notes, normal range of motion on examination, and no neurological deficits. (TR 29). The ALJ also reasoned that Plaintiff had not sought medical treatment between May 2010 and March 2011 and that this gap in treatment reduced her credibility. (TR 29). The ALJ further noted that although Plaintiff complained at the hearing of daytime drowsiness due to medications the medical record did not show that she had reported this adverse side effect. The ALJ also noted that after Plaintiff originally alleged she became disabled and prior to her amended disability onset date she had been treated for an injury that she reported occurred while riding an all-terrain vehicle ("ATV"), which indicated her allegations were not credible. (TR 30).

The ALJ further noted that Plaintiff's history of travel did not lend credibility to her allegations. Finally, the ALJ noted that although Plaintiff described limited daily activities "it is difficult to attribute that degree of limitation to her medication condition (as opposed to other reasons) based on the medical evidence included in the record" and that her reportedly limited daily activities were "outweighed by the other factors discussed in this decision." (TR 30).

All of the reasons cited by the ALJ in determining Plaintiff's credibility are well supported by the evidence in the record. Plaintiff complains that her "ATV accident" occurred prior to the amended date she alleged her disability began. The treatment record for the ATV-related hand injury is dated February 13, 2008. (TR 336-341). As the ALJ pointed out, Plaintiff originally alleged she became disabled in 2004. At the hearing,

13

Plaintiff amended the disability onset date to a date that approximately corresponded with the date of the agency's denial of her previous disability application. Under these circumstances, the ALJ could rationally infer that Plaintiff had engaged in activities that were inconsistent with her allegation of disabling impairments both in her original application and in her previous disability application.

Plaintiff contends that the ALJ erred in relying on her travel history as the towns she admitted traveling to were 10 to 30 miles from the town in which she resided. Plaintiff estimated at her hearing that she could sit for only 15 minutes, that she "live[d] in a recliner," that she did not "do any physical anything," and that she could not "do anything" even on good days. (TR 56, 57, 62). However, Plaintiff did not assert that she had difficulty traveling, and Dr. Birdwell noted that during his examination of Plaintiff she did not complain of difficulty traveling. (TR 276). Thus, even though these were short-distance trips, the ALJ did not err in relying on the trips as one factor in determining the credibility of Plaintiff's allegation of disabling pain and pain-related limitations.

As the ALJ reasoned, the record reflects that Plaintiff did not persistently seek medical treatment for her allegedly disabling impairments. There is no record of medical treatment of Plaintiff for a significant portion of time between May 2010 and March 2011. Further, as the ALJ also reasoned, the most recent records of Plaintiff's medical treatment showed Plaintiff did not exhibit significant physical or mental deficits. (TR 361, 363, 385, 419). No error occurred with respect to the ALJ's evaluation of Plaintiff's credibility at step four.

V. Analysis of Medical Opinions

The ALJ found at step two that Plaintiff's mental impairment was not severe. Plaintiff contends that the ALJ erred in giving great weight to Dr. Danaher's opinion that Plaintiff's depression was not a severe impairment. Plaintiff argues that she had been diagnosed with depression and prescribed anti-depressant medication, and therefore the ALJ could not ignore this evidence in determining that her mental impairment was not severe.

As support for the claimed error, Plaintiff points to (1) Dr. Danaher's diagnostic impression that Plaintiff had major depressive disorder and (2) the record showing Plaintiff was prescribed anti-depressant medication. However, it is well established that a diagnosis alone is not sufficient to establish a severe impairment. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)(claimant must show more than mere presence of condition or ailment to satisfy step two's requirement of a severe impairment). A mental impairment is evaluated in terms of functional limitations resulting from the impairment and not merely diagnoses. 20 C.F.R. § 404.1520a. Additionally, the fact that Plaintiff had been prescribed anti-depressant medication also fails, without more, to indicate the presence of a severe impairment.

In the ALJ's discussion of the step two finding, the ALJ pointed to Dr. Danaher's opinion concerning Plaintiff's mental functional abilities. Dr. Danaher opined in his report of his consultative psychological evaluation of Plaintiff that she was capable of understanding, remembering, and carrying out simple and complex instructions. The ALJ properly described this statement, and the ALJ determined that the assessment was entitled

to "some weight," as it indicated Plaintiff's depression was not a severe impairment. (TR 31). The ALJ did not err in considering the consultative examiner's opinion in determining whether Plaintiff's mental impairment constituted a severe impairment under the agency's regulations.

The ALJ discussed in the decision the report of the consultative examiner, Dr. Birdwell. The ALJ stated she had given "great weight" to Dr. Birdwell's opinion that Plaintiff was capable of manipulating small objects and "ha[d] no difficulty traveling." (TR 31). Dr. Birdwell stated in his report that during the examination Plaintiff had no difficulty manipulating small objects and had no complaints of difficulty traveling. (TR 276). These statements were not typical medical opinions of Plaintiff's functional work-related abilities, however, and the ALJ was not required to assess the weight to be given to the statements. The ALJ certainly did not err in considering the statements in connection with the disability determination, and any error in considering these statements as medical opinions was harmless.

Plaintiff asserts that the ALJ erred in rejecting the opinion of Dr. Lynch, Ph.D. Dr. Lynch authored an undated letter addressed to Plaintiff's disability attorney stating that he had treated Plaintiff on June 30, 2010, and on August 5, 2010. Dr. Lynch stated that Plaintiff had not returned after the second session, but that "[h]er presentation at that time clearly indicated she could not sustain the physical pace or focus needed for stable employment. (TR 358). The ALJ rejected the opinion in part because the record included no treatment record for the two sessions, in part because there was no long-term record of treatment of Plaintiff

by the psychologist, in part because the opinion addressed an issue reserved to the Commissioner, in part because substantial evidence in the record, which the ALJ cited, contradicted the opinion, and in part because the opinion was inconsistent with the assessment by Dr. Danaher that Plaintiff was capable of adequately performing work involving simple and complex instructions. The ALJ provided multiple reasons that are well supported by the record for rejecting Dr. Lynch's opinion. No error occurred in this respect.

Because there is substantial evidence in the record to support the Commissioner's decision, and no error occurred in the ALJ's evaluation of the evidence, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      August 21st , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this <u>  1st</u> day of <u>          August  </u>, 2014.

<u>/s/ Gary M. Purcell</u>
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE